**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PATRICIA WHARWOOD, *et al.*,

    Plaintiffs,

v.

CHIEF FINANCIAL OFFICER- WELLS FARGO BANK N.A, *et al.*,

    Defendants.

Civil Action No. 19-16590 (ES) (ESK)

OPINION

**SALAS, DISTRICT JUDGE**

*Pro se* plaintiffs Patricia Wharwood and Richard Concepcion[1] ("Plaintiffs") bring this action against defendants Federal Housing Finance Agency ("FHFA") and Wells Fargo Bank, N.A. ("Wells Fargo")[2] (collectively, "Defendants") in connection with a residential mortgage loan transaction, foreclosure action, and eviction. (D.E. No. 1 ("Complaint" or "Compl.")). Pending before the Court are Defendants' motions to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. Nos. 5 & 8). The Court has considered the parties' submissions and decides the motions without oral argument. *See* Fed. R. Civ. P 78(b); L. Civ. R. 78.1(b). For the reasons discussed below, Defendants' motions are GRANTED.

**I. Background**

At the onset, the Court notes that Plaintiffs' Complaint is not a model of clarity. In light

---

[1]     Wharwood appears to be the owner of the property that was the subject of the underlying foreclosure action, and Concepcion was a tenant. (*See* D.E. No. 1-5).

[2]     Plaintiffs identify Wells Fargo's Chief Financial Officer in the caption of the complaint, but it appears that all allegations in the body of the complaint are against Wells Fargo.

1

of Plaintiffs' *pro se* status, the Court gleans, as best it can, the following facts from the Complaint and the attached exhibits. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On October 10, 2006, Wharwood executed a mortgage note with World Savings Bank, FSB, a Federal Savings Bank, its successors and/or assignees in the amount of $525,000. (*See* D.E. No. 1-4, Compl., Ex. D at 4).[3] The loan was secured by a mortgage on the property located at 5 Surrey Road, Lincoln Park, NJ, 07035 (the "Property"), and was recorded on October 23, 2006. (*Id.* at 4 & 6; Compl. ¶ 9). Wharwood's loan went into default on November 15, 2008. (D.E. No. 1-4, Compl., Ex. D at 4). World Savings Bank, FSB merged with and became Wachovia Mortgage, FSB, the entity which then initiated a foreclosure action on July 21, 2009 (the "Foreclosure Action"). (*Id.* at 3 & 7). On July 3, 2013, the New Jersey Superior Court substituted Wells Fargo as the plaintiff in the Foreclosure Action. (*See* D.E. No. 8-4, Van Dyke Cert., Ex. B at 3–4).[4] The Superior Court entered a final judgment and a writ of execution in favor of Wells Fargo on January 6, 2014. (D.E. No. 1-4, Compl., Ex. D at 16–18).

On June 13, 2014, Wharwood filed a motion to vacate final judgment, cancel the sheriff's sale, and stay proceedings to seek competent counsel, which the Superior Court denied on July 22, 2014. (D.E. No. 8-6, Van Dyke Cert., Ex. D). Wharwood appealed, and the New Jersey Appellate Division affirmed the Superior Court's decision on February 18, 2016. (D.E. No. 8-7, Van Dyke

---

[3] All references to page numbers in the exhibits attached to the Complaint and to the certification of Greyson K. Van Dyke, Esq (D.E. No. 8-2 ("Van Dyke Cert.")) refer to the page numbers generated by the Court's electronic case filing system.

[4] The Court takes judicial notice of several items of public record attached to Wells Fargo's motion to dismiss from the underlying Foreclosure Action that are integral to the procedural history and are incorporated by reference in the Complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.") (internal quotation marks and citation omitted).

Cert., Ex. E).  On April 13, 2017, an "Alias Writ of Execution" was filed in the Foreclosure Action. (D.E. No. 8-8, Van Dyke Cert., Ex. F).

Thereafter, Wharwood filed a motion to stay the sheriff's sale, which was denied by the Superior Court on July 5, 2017.  (D.E. No. 8-9, Van Dyke Cert., Ex. G).  A writ of possession was entered in favor of Wells Fargo on July 20, 2018.  (D.E. No. 1-3, Compl., Ex. C).  On January 16, 2019, the Superior Court denied another motion by Wharwood to stay her eviction from the Property.  (D.E. No. 8-11, Van Dyke Cert., Ex. I).

In the meantime, on January 24, 2018, the Property was sold to Wells Fargo at a sheriff's sale, (D.E. No. 8-10, Van Dyke Cert., Ex H), and Plaintiffs were ultimately evicted on January 17, 2019, (Compl. ¶¶ 10 & 21).  After the sale, Wharwood filed a motion to strike the writ of possession, alleging that the eviction violated New Jersey's anti-eviction laws; the Superior Court denied this motion on April 29, 2019.  (D.E. No. 8-12, Van Dyke Cert., Ex. J).

With that backdrop, Plaintiffs filed the instant Complaint on August 12, 2019, bringing claims against Wells Fargo for (i) Count One: "action for ejectment"; (ii) Count Two: "action in trespass"; (iii) Count Three: "breach of estate and statutory rights"; (iv) Count Four: "wrongful use of civil proceedings & quiet title"; (v) Count Five: "action [to] revive the equity of redemption"; and a claim against FHFA to impose a constructive trust (Count Six).  (Compl. ¶¶ 27–62).  Wells Fargo moves to dismiss all claims against it based on the *Rooker-Feldman* doctrine, *Colorado River* abstention, the entire controversy doctrine, res judicata and collateral estoppel, and for failure to state a claim.  (*See generally* D.E. No. 8-1 ("WF Mov. Br.")).  FHFA moves to dismiss Count Six based on sovereign immunity and failure to state a claim.  (*See generally* D.E. No. 5-1 ("FHFA Mov. Br.")).  Plaintiff Wharwood filed an untimely, one-page opposition, asserting that she "opposes [d]ismissal and need not make any particular [s]tatement

3

in that regard" because "defendant's [m]otion is bogus, unworthy of response, evasive and inane." (D.E. No. 19).

## II. Legal Standards

### A. Lack of Subject Matter Jurisdiction Under 12(b)(1)

The Court can adjudicate a dispute only if it has subject-matter jurisdiction to hear the asserted claims. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (noting that federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto"). "Rule 12(b)(1) governs jurisdictional challenges to a complaint." *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016). Once a 12(b)(1) challenge is raised, the burden shifts to the plaintiff to demonstrate the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

In deciding a 12(b)(1) motion, "a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed." *Leadbeater v. JPMorgan Chase, N.A.*, No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017). "When a party moves to dismiss prior to answering the complaint . . . the motion is generally considered a facial attack." *Id*. In reviewing a facial attack, the Court should consider only the allegations in the complaint, along with documents referenced therein and attached thereto, in the light most favorable to the nonmoving party. *See Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Thus, the motion is handled much like a 12(b)(6) motion, and allegations in the complaint should be accepted as true. *Leadbeater*, 2017 WL 4790384, at *3. Conversely, if the motion concerns a factual attack, then "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not

4

preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Tobin v. U.S.*, 170 F. Supp. 2d 472, 476 (D.N.J. 2001) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

### B. Failure to State a Claim Under Rule 12(b)(6)

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). The Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Finally, "[i]n considering the defendants' motion to dismiss, the . . . Court [i]s required to interpret the *pro se* complaint liberally . . . ." *See, e.g.*, *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). "Yet there are limits to our procedural flexibility" when it comes to *pro se* litigants. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Particularly, *pro se* litigants are not

relieved of the obligation to plead enough factual matter to meet Rule 8(a)(2)'s plausibility standard. *See Franklin v. GMAC Mortg.*, 523 F. App'x 172, 172–73 (3d Cir. 2013); *D'Agostino v. CECOMRDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010) ("The Court need not, however, credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'").

### III.  Discussion

#### A.  *Rooker-Feldman Doctrine*

Wells Fargo argues that the *Rooker-Feldman* doctrine bars all of Plaintiffs' claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court agrees with Wells Fargo in part.

The *Rooker–Feldman* doctrine strips district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under the *Rooker–Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). This is because federal district courts are "empowered to exercise original, not appellate, jurisdiction." *Exxon Mobil,* 544 U.S. at 283. For the *Rooker-Feldman* doctrine to apply, the Third Circuit requires a showing that: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

As an initial matter, Wells Fargo does not distinguish between plaintiff Wharwood and plaintiff Concepcion in its *Rooker-Feldman* analysis. (WF Mov. Br. at 8–10). Based on Wells Fargo's statement of facts, and the relevant foreclosure documents, it does not appear that Concepcion was a party to the state court foreclosure proceeding. (*See id.* at 3–4; *see, e.g.*, D.E. No. 1-4, Compl., Ex. D at 16–18; D.E. Nos. 8-6, 8-7, 8-9 & 8-11, Van Dyke Cert., Exs. D, E, G & I). Indeed, Concepcion's lease with Wharwood is dated February 21, 2016 (D.E. No. 1-5, Compl., Ex. E), which is after the final judgment was issued but before the eviction. Thus, with respect to Concepcion, it is not clear that he "lost in state court," as required under the *Rooker-Feldman* analysis. The Court does not endeavor to conduct this analysis for the parties and will proceed with the *Rooker-Feldman* analysis with respect to plaintiff Wharwood only. Though, as set forth below, it appears that the other elements would bar Concepcion's claims as well. In any event, Concepcion's claims fail for the reasons discussed in Section III(C).

With respect to Wharwood, the first and the third elements are easily met because she lost in the underlying state Foreclosure Action over five years before Plaintiffs' Complaint was filed with the District Court on August 12, 2019. (*See* D.E. No. 1-4, Compl., Ex. D at 16–18 (attaching a copy of the state court's final judgment of foreclosure issued on January 6, 2014)). Moreover, the state court denied Wharwood's various motions to vacate the final judgment and stay the sheriff's sale prior to the filing of the instant lawsuit. (D.E. Nos. 8-6, 8-7, 8-9 & 8-11, Van Dyke Cert., Exs. D, E, G & I).

"The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Great W. Mining & Mineral*, 615 F.3d at 166. Prong two presents an exacting question requiring "an inquiry into the source of the plaintiff's injury." *Id*. "When the source of the injury is the defendant's actions (and not the state-court judgments),

the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court[.]" *Id.* at 167. "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.* For *Rooker-Feldman* to bar jurisdiction, the injury must have been "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* Therefore, the Court must identify the source of the injury for each claim alleged by Plaintiffs.

### i. *Counts One, Two, and Three*

Although Counts One, Two and Three assert different causes of action, the Court considers them together for purposes of the *Rooker-Feldman* analysis as they appear to assert claims stemming from the same conduct and alleging the same injury. Specifically, in Counts One, Two, and Three, Plaintiffs take issue with the writ issued in connection with the state court's final judgment that allowed Wells Fargo to take possession of their home (Compl. ¶ 27) and trespass on their land. (*Id.* ¶¶ 31 & 35). Plaintiffs seek "immediate possession" of the Property (*id.* ¶30), request that Wells Fargo "vacate [the] premises" (*id.* ¶35), and demand monetary damages (*id.* ¶¶ 32 & 35). In other words, Plaintiffs' alleged injury stems directly from the state court judgments rendered in the foreclosure action, and Plaintiffs are challenging the validity of the foreclosure and attempting to circumvent the state court's denial of Wharwood's subsequent requests to vacate the judgment and stop the sheriff's sale. "This type of action is exactly what *Rooker–Feldman* is meant to prevent: an attempt to invalidate the final judgment of foreclosure and various other orders from a state court action in a separate federal court action." *See Willoughby v. Zucker,*

*Goldberg & Ackerman, LLC*, No. 13-7062, 2014 WL 2711177, at *4 (D.N.J. June 16, 2014). Thus, Counts One, Two, and Three are barred under the *Rooker-Feldman* doctrine.[5]

### ii. Count Four

In Count Four, Plaintiffs allege a claim for "wrongful use of civil proceedings," asserting that Wells Fargo misused the judicial foreclosure process to "steal [their] house." (Compl. ¶ 36). While, at first glance, this count may appear to be based on Wells Fargo's actions as opposed to any state-court judgment, the Third Circuit has found similar claims to be barred by *Rooker-Feldman*. *See Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49 (3d Cir. 2013). In *Gage*, the plaintiff filed his complaint in federal court following a state court foreclosure action. *Id.* at 50. Gage alleged that, by enforcing the foreclosure judgment, Wells Fargo had acted fraudulently and committed "criminal acts." *Id.* at 51. In affirming the district court's dismissal under the *Rooker-Feldman* doctrine, the Third Circuit explained that the nature of these claims is "that the bank had no right to foreclose on the property and therefore committed 'criminal acts' by enforcing the foreclosure judgment." *Id.* The *Gage* court held that "[t]hese claims are in essence an attack on the state court judgment of foreclosure." *Id.* The *Gage* court's rationale is persuasive here. Plaintiffs assert that Wells Fargo had no right to initiate a foreclosure action, and therefore wrongfully used the civil justice system to retrieve the Property. (Compl. ¶¶ 36–38). As in *Gage*, this claim is essentially an attack on the state court's judgment of foreclosure, and the relief sought, granting quiet title in favor of Plaintiffs, would require the review and reversal of the earlier state

---

[5] This conclusion focuses on the alleged injury and whether Plaintiffs are "inviting the district court to review and reject the state judgments" in Counts One, Two and Three. *Great W. Mining & Mineral*, 615 F.3d at 166. The Court construed Plaintiffs' complaint liberally in reaching this conclusion. To the extent there are allegations within Counts One, Two and Three that can be construed otherwise, as set forth in Section III(C), Plaintiffs have failed to state a claim.

court judgment. Thus, Count Four of Plaintiffs' Complaint is also barred under the *Rooker-Feldman* doctrine.

### iii. Count Five

Finally, in Count Five, Plaintiffs seek to "revive the equity of redemption." (Compl. ¶ 42). It is difficult to discern the particular facts or injury alleged in connection with this claim, or what laws would entitle Plaintiffs to the relief sought. From what the Court can gather, Plaintiffs argue that they have a right to redemption, but that they did not know who to pay or where to pay to redeem the Property before the sheriff's sale. (Compl. ¶¶ 50–51). Thus, at its core, this appears to be an argument that the sheriff's sale was somehow improper or illegal and shouldn't have occurred. Once again, "[t]his review of a state court's action is precisely what a district court may not do under *Rooker-Feldman* . . . ." *Willoughby*, 2014 WL 2711177, at *5 (explaining that the state court maintains jurisdiction in a foreclosure action "(1) if the home is sold at sheriff's sale, the later of ten days after the sheriff's sale or the delivery of the sheriff's deed; or (2) if the sheriff's sale is averted by payoff, until payment is made, the judgment is entered, and the case is dismissed"); *see also*, *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (explaining that *Rooker-Feldman* bars claims where "federal relief can only be predicated upon a conviction that the state court was wrong"). As such, Count Five is also barred by the *Rooker-Feldman* doctrine.

Based on the foregoing, the Court concludes that all of Wharwood's claims against Wells Fargo are barred by the *Rooker-Feldman* doctrine.

### B.     Count VI – Defendant FHFA

As a preliminary matter, Plaintiffs do not allege any facts that explain FHFA's involvement in the underlying dispute. FHFA explains the potential relevance it has to the instant litigation:

> FHFA was established as an independent regulatory agency by the
> Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L.

> No. 110–289, 122 Stat. 2654 (codified at 12 U.S.C. § 4511 *et seq.*), and is responsible for the effective supervision, regulation, and housing mission oversight of Fannie Mae, Freddie Mac, and the Federal Home Loan Bank System, which includes the 11 Federal Home Loan Banks and the Office of Finance. 12 U.S.C. §§ 4502(20), 4511. Fannie Mae, Freddie Mac, and the FHL Bank System are housing government sponsored enterprises that provide more than $6 trillion in funding for the U.S. mortgage markets and financial institutions. FHFA's mission is to ensure that the housing government sponsored enterprises operate in a safe and sound manner so that they serve as a reliable source of liquidity and funding for housing finance and community investment. *See, e.g.,* 12 U.S.C. § 4513. Pursuant to HERA, on September 6, 2008, the Director of FHFA placed Fannie Mae and Freddie Mac into conservatorship and named FHFA as Conservator. *See Perry Capital LLC ex rel. Inv. Funds v. Mnuchin*, 864 F.3d 591, 600 (2017) (detailing the history of the conservatorship). FHFA does not have oversight, supervision, or regulatory responsibilities over any mortgage originators or private banks, such as Wells Fargo. *See generally* 12 U.S.C. Ch. 46.

(FHFA Mov. Br. at 3–4). As FHFA points out, it is not a party to the foreclosure proceeding, and Fannie Mae and Freddie Mac are not parties to the foreclosure proceeding or defendants in this case. (*Id.* at 4). In the Complaint, Plaintiffs claim that FHFA "conserves and holds the underwriting [for] all federally supplied residential mortgages in America today, through Freddie Mac and Fannie Mae." (Compl. ¶ 4). With respect to Count Six, Plaintiffs' only allegations with respect to FHFA are that (i) "FHFA is responsible for the failure to develop appropriate and adequate loan modification policy and controls . . ." (*id.* ¶ 58); and (ii) "FHFA should have guaranteed that when a property is sold by the Sheriff, or that before it is sold by the Sheriff, it will be available at 'warehouse fair value' to the mortgagor and her privity" (*id.* ¶ 59). Plaintiffs seek damages against FHFA and the imposition of a constructive trust. (*Id.* ¶ 60). Although it is not entirely clear what the claims against FHFA are, FHFA argues that, to the extent it is sued in its official capacity as a federal agency, sovereign immunity bars the claim (FHFA Mov. Br. at 7); and to the extent it is sued in its role as conservator, 12 U.S.C. § 4617 bars the claim (*id.* at 11).

FHFA also argues that, pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), Plaintiffs fail to state any claim against it.

### i. Claims Against FHFA in its Official Capacity

"Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies . . . in their official capacities." *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012). A waiver of sovereign immunity must be express and unambiguous to confer subject matter jurisdiction on a court. *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000). A waiver of sovereign immunity must be strictly construed in favor of the sovereign, and the terms of the waiver define the extent of the court's jurisdiction. *Treasurer of N.J.,* 684 F.3d at 396. "Thus, the mere failure of a federal agency to follow procedure is insufficient to waive sovereign immunity unless Congress has explicitly provided so." *Bishop v. Dep't of Homeland Sec.*, No. 14-5244, 2015 WL 2125782, at *4 (D.N.J. May 6, 2015), *aff'd sub nom., Bishop v. U.S. Dep't of Homeland Sec.*, 648 F. App'x 180 (3d Cir. 2016).

Although it is their burden to do so, Plaintiffs present no arguments as to whether any waiver of sovereign immunity applies here. *See Logan v. United States*, No. 11-7235, 2012 WL 2979041, at *1 (D.N.J. July 20, 2012) ("Plaintiff bears the burden of showing an unequivocal waiver of sovereign immunity as a basis for a court's jurisdiction over its claims against government defendants."); *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012). FHFA discusses at length two potential waiver statutes that could *potentially* be implicated here—the Federal Torts Claim Act ("FTCA") and the Administrative Procedure Act ("APA"). (FHFA Mov. Br. at 6–10). But as Defendants point out, those statutes are not mentioned by Plaintiffs, and are not applicable here. *See e.g.*, *Hurley v. Fata*, No. 19-15624, 2019 WL 6975095, at *3 (D.N.J. Dec. 19, 2019) (explaining that FTCA "claims brought against parties other than the

United States, such as federal agencies or individuals, are routinely dismissed"); *DiCicco v. Fed. Emergency Mgmt. Agency*, No. 14-3715, 2015 WL 794934, at *2 (D.N.J. Feb. 25, 2015) (dismissing plaintiff's complaint for lack of subject-matter jurisdiction because she failed to file an administrative tort claim with the proper federal agency prior to her federal suit); *Naik v. Renaud*, 947 F. Supp. 2d 464, 473 (D.N.J. 2013), *aff'd sub nom. Naik v. Dir. U.S. Citizenship & Immigration Servs. Vermont*, 575 F. App'x 88 (3d Cir. 2014) (dismissing claim under the APA where, as here, plaintiff did not allege that defendants failed to take a *required* action).

Accordingly, any claims against FHFA in its official capacity are barred by sovereign immunity.

### ii.     *Claims Against FHFA in its Role as Conservator*

Pursuant to 12 U.S.C. § 4617(a)(7) and (f), when acting as conservator or receiver, FHFA "shall not be subject to the direction or supervision of any other agency of the United States or any State in the exercise of the rights, powers, and privileges of the Agency," and "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." FHFA asks the Court to conclude that Plaintiffs' claims against FHFA improperly seek to restrain or affect the exercise of FHFA's powers as a conservator. (FHFA Mov. Br. at 11). But at the same time, FHFA argues that it was not involved in the underlying dispute and that there has been no exercise of the FHFA's powers as a conservator in the first place. (*Id.* at 10 (speculating and assuming arguendo that FHFA is sued for actions taken in its role as a conservator)). Thus, because the Court cannot discern what exactly Plaintiffs' claims are, and whether and to what extent they challenge FHFA's powers as a conservator, the Court declines to

13

weigh in on this issue.[6] However, the Court agrees with FHFA that any claim against FHFA in its role as a conservator must fail for failure to state a claim.

### C. Failure to State a Claim

Finally, Plaintiffs' Complaint fails to state a claim upon which relief can be granted. The Complaint does not adequately identify what laws the Defendants violated or how those laws were violated. Specifically, although the Complaint alleges six counts, those counts often reference causes of action that do not exist (*see e.g.*, Compl. at 8 & 10 (alleging claims for "breach of estate" and for "action [to] revive the equity of redemption")), and/or reference multiple laws within one count that do not appear relevant to the complained of conduct. (*See e.g.*, Compl. ¶ 33 (within the claim for "breach of estate and statutory rights," alleging that Plaintiffs are "entitled to the equal protections of federal and state law," and explaining that this is a count for "breach of holdover lease, or breach of implied contract[,] and breach of statutory rights under the various anti-eviction laws" (internal quotation marks omitted)). The factual allegations in the Complaint fare no better, as there are no facts alleged in the Complaint to allow the Court "to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *See, e.g.*, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Instead, the Complaint is mostly riddled with "mere conclusory statements" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]"—which are insufficient to state a claim. *See, e.g.*, *id.* This is particularly true with respect to FHFA, as the allegations in the Complaint do not at all identify how FHFA is connected to the underlying dispute. As such, the Court finds that Plaintiffs' Complaint fails for the additional reason that it fails to state a claim upon which relief can be granted.

---

[6] The Court does not intend to minimize Defendants' efforts to dissect Plaintiffs' allegations and argue against all possible iterations of those allegations. Indeed, the Court appreciates Defendants' efforts in this regard. But given the amount of speculation it would require for the Court to opine on this issue, the Court declines to consider it.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS the Defendants' motions to dismiss.[7] An appropriate Order accompanies this Opinion.

_s/    Esther Salas_
**Esther Salas, U.S.D.J.**

---

[7] The Court does not opine on Defendants' additional arguments, as the entire Complaint is dismissed for the reasons discussed herein.